```
IN THE UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF TENNESSEE
              WESTERN DIVISION
```
___

| | |
|---|---|
| **TERESA ALLEN,** )<br>)<br>    **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**CAROLYN W. COLVIN, ACTING** )<br>**COMMISSIONER OF SOCIAL** )<br>**SECURITY,** )<br>)<br>    **Defendant.** ) | No. 16-1086-TMP |

___

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**
___

Before the court is plaintiff Teresa Allen's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1385. (ECF No. 1.) The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 9.) For the following reasons, the Commissioner's decision is affirmed.

## I. FINDINGS OF FACT

Allen applied for disability insurance benefits on November 16, 2012, with an alleged onset date of July 1, 1965.[2] (R. 54.)

___

[1]Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this action was filed.

[2]Allen initially filed separate applications under both Title II and Title VXI of the Act. The Title XVI application was denied and

The alleged onset date was later amended to November 1, 2012. (R. 54.) The claim was denied initially and on reconsideration. (R. 93; 136-37.) At Allen's request, an Administrative Law Judge ("ALJ") held a hearing and issued a written decision. (R. 51-68.) In his written decision, the ALJ first found that Allen last met the insured status requirements of the Social Security Act on June 30, 2013 and had not engaged in substantial gainful activity since during the period from her amended onset date through her date last insured. (R. 56.) Second, the ALJ determined that Allen had the following severe impairments through the date last insured: degenerative joint disease of the left ankle; degenerative disc disease of the lumbar spine; panic disorder; cyclothymic disorder; borderline personality disorder; and histrionic personality disorder. (R. 56.) Third, the ALJ determined Allen did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 57.) The ALJ also determined that Allen retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 414.967(b) except the claimant can occasionally climb, balance, stoop, crouch, kneel, or crawl and can stand and/or walk for four hours in an eight-hour workday. Additionally, the claimant can understand, remember, and carryout short and

---

is not a subject of this appeal. Her Title II application was apparently mistakenly omitted from the initial record. The court requested clarification on this issue, and the government responded on May 29, 2018. (ECF NO. 19.) The court will accept the Title II application as attached to the government's supplemental brief for purposes of this appeal. (ECF No. 19-1.)

> simple instructions and make judgments on simple work-
> related decision and can have occasional contact with
> supervisors and co-workers, but cannot have contact with
> the public.

(R. 58.) Fourth, the ALJ determined that Allen could not perform any past relevant work. (R. 62.) Finally, the ALJ determined that, considering Allen's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which she could perform. (R. 62.) In making this determination, the ALJ utilized a vocational expert ("VE"), who opined that, given the RFC finding, Allen would be able to perform unskilled occupations with a light exertional requirement such as power screw operator, assembly press operator, and as an office helper. (R. 63.) Thus, the ALJ found that Allen was not disabled. (R. 63.) The Social Security Administration's ("SSA") Appeals Council denied Allen's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1.)

Allen filed the instant action on May 2, 2016, seeking reversal or remand of the Commissioner's decision. (ECF No. 1.) Allen argues both that the ALJ made legal errors and that the ALJ's decision was not supported by substantial evidence. (ECF No. 13 at 3.) Specifically, Allen argues that the ALJ should have found, based on a treating therapist and independent examining physician's records and her own testimony, that she was disabled based on her mental impairments. (Id. at 2.) Allen also argues that the ALJ failed to give good reasons for dismissing her treating therapist's

-3-

opinions, erred in finding that such treating therapist's opinions could not be given weight, erred in determining credibility, failed to consider all her impairments in making the RFC determination and erroneously relied on the Grids in a case dealing with non-exertional impairments. (Id. at 2-3.) These arguments are largely interrelated and accordingly the court construes Allen's complaint as raising four distinct issues: (1) whether the ALJ's assessment of the medical source evidence was supported by substantial evidence; (2) whether the ALJ's credibility determination was supported by substantial evidence; (3) whether the RFC determination was supported by substantial evidence; and (4) whether the ALJ erred in relying on the Grids at Step Five. The court will address each in turn.

## II. CONCLUSIONS OF LAW

**A. Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the

Commissioner used the proper legal criteria in making the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is

charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Kiner v. Colvin, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

**B.    The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is

-6-

on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return

to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C. Whether the ALJ's Assessment of the Medical Source Evidence was Supported by Substantial Evidence**

Allen first argues that the substantial evidence of the record establishes that her multiple mental impairments "preclude even unskilled work," rendering her disabled on this basis alone. (ECF No. 13 at 12-13.) Allen also argues that the ALJ erred in giving any weight to the reports of Tennessee Department of Disability Section ("DDS") medical examiners and failed to give good reasons for dismissing her treating therapist's opinions. (Id. at 13.) Allen specifically points to the opinion of her treating therapist, Janice Halstead, to support a finding of marked and extreme impairments. (Id. at 12-13.) Allen appears to argue that Halstead was a treating source whose opinion should have been afforded controlling weight. (Id. at 15.)

To the contrary, Halstead is properly characterized as an "other medical source" under the Social Security regulations. See 20 C.F.R. §§ 404.1502, 404.1513(a); Bowman v. Comm'r of Soc. Sec., 683 F. App'x 367, 374 (6th Cir. 2017). "[O]ther-source opinions are not entitled to any special deference." Hill v. Comm'r of Soc. Sec., 560 F. App'x 547, 550 (6th Cir. 2014). An ALJ is only required to "generally . . . explain the weight given to opinions for these 'other sources[.]'" Id. (quoting SSR 06-03P, 2006 WL 2329939, at *6). The ALJ was not required to provide an exhaustive analysis of every regulatory factor in assessing Halstead's opinion. See Francis v. Comm'r Soc. Sec. Admin., 414 F. App'x 802, 804 (6th Cir. 2011). Here, the ALJ considered Halstead's assessments against the other evidence in the record and noted several inconsistencies. Specifically, Allen testified that she could interact with her family, shop, and concentrate on simple tasks like watching television, playing solitaire, and completing puzzles. (R. 60.) Furthermore, the ALJ considered other medical records, including a consultative examination performed by Dennis Wilson, Ph.D, which indicated that, while Allen exhibited some limitations, she was far less restricted than Halstead suggested. (R. 60.) The ALJ also gave weight to non-examining medical experts who reviewed the psychological treatment records, because those records were consistent with each other and the record as a whole. The ALJ was not required to afford Halstead's opinion controlling

weight, and he otherwise did not commit legal error in assessing Halstead's opinion. Substantial evidence supports his conclusion as to that assessment.

**D. Whether the ALJ's Credibility Assessment was Supported by Substantial Evidence**

Allen next argues that the ALJ improperly assessed her credibility. Allen asserts that the ALJ merely relied on a minimal boilerplate statement of credibility in violation of SSR 96-7p. (ECF No. 13 at 16-17.) However, the alleged "boilerplate" statement that Allen cites as evidence of legal error specifically states that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible *for the reasons explained in this decision*." (R. 59.) (Emphasis added.) The ALJ's decision goes on to discuss in substantial detail the record as a whole, noting inconsistencies in the medical records, assessments, and Allen's own testimony. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 477 (6th Cir. 2016); Forrest v. Comm'r of Soc. Sec., 591 F. App'x 359, 366 (6th Cir. 2014). Specifically, the ALJ noted several clinical examinations that were inconsistent with the alleged inability to perform any sustained work activity, treatment notes revealing a greater capacity to perform daily activities, and repeated failures to attend scheduled counseling sessions. Such evidence, considered as a whole, undercuts Allen's credibility. Substantial evidence thus supports the ALJ's credibility determination, and this court

may not second-guess such finding. See Stephenson v. Comm'r of Soc. Sec., 635 F. App'x 258, 263 (6th Cir. 2015); Ulman v. Comm'r of Soc. Sec. Admin., 693 F.3d 709, 714 (6th Cir. 2012).

**E. Whether the RFC Determination was Supported by Substantial Evidence**

Allen essentially repeats the above arguments to support her contention that the RFC determination was erroneous. Specifically, Allen argues that "the ALJ ignored much of the opinion evidence offered by treating providers, so underestimated the effects of claimant's mental impairments." (ECF No. 13 at 18.) As explained above, however, the ALJ's consideration of Halstead's opinions and the other medical source evidence was not erroneous and was supported by substantial evidence. Furthermore, the ALJ's credibility determination was supported by substantial evidence. The ALJ properly explained the weight assigned to the medical sources and how such sources supported his RFC determination. Accordingly, there is no indication that the ALJ erred as a matter of law in making the RFC determination. Such determination was likewise supported by substantial evidence.

**F. Whether the ALJ Inappropriately Relied on the Grids at Step Five**

Allen finally argues that she exhibited both exertional and non-exertional limitations, and the ALJ thus inappropriately relied on the Grids in assessing whether she was disabled. (ECF No. 13 at 19.) Allen is correct that it is inappropriate to rely solely on

the Grids when non-exertional impairments exist.  See Amir v. Comm'r of Soc. Sec., 705 F. App'x 443, 451 (6th Cir. 2017).  But the ALJ's opinion clearly states that he utilized the Grids as a "framework for decisionmaking," in conjunction with the testimony of a VE in assessing the effect of Allen's non-exertional impairments on her capacity to perform work.  Allen's assertion that the ALJ relied solely on the Grids lacks any basis in fact.  Allen does not otherwise identify any legal error with the ALJ's determination at Step Five.  The ALJ did not rely solely on the Grids at Step Five, no legal error is apparent, and substantial evidence otherwise supports his decision.

## III. CONCLUSION

For these reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

February 27, 2019
Date